**STATE, ex rel. ATTORNEY GENERAL v. KLEMAN.**

No. 77-1393.

Circuit Court, Leon County.

October 4, 1977.

Richard A. Hixson, Assistant Attorney General, for the petitioner.

Bryan W. Henry, City Attorney, James R. English, Assistant City Attorney, for the respondent.

DONALD O. HARTWELL, Circuit Judge.

*Final judgment:* This cause is before the court upon a mandamus action brought by the petitioner Robert L. Shevin in his capacity as Attorney General of the state of Florida. Respondent Daniel A. Kleman is the city manager of the city of Tallahassee. Petitioner seeks to compel respondent in accordance with the provisions of Section 119.01, Florida Statutes, to produce for public inspection certain documents in the respondent's control.

By motion to limit the scope of alternative writ of mandamus, which motion was granted without objection of the respondent, the documents sought by petitioner consist of the applications, résumés, letters of interest from candidates or potential candidates, correspondence with interested candidates, and materials of like kind relating to the identification of and professional qualification of applicants for the position of assistant city manager of the city of Tallahassee.

The issues presented are, first, whether the documents referred to are public records as defined by Section 119.011(1), Florida Statutes, and secondly, if so, whether these documents are exempt from disclosure under such Act or by considerations of public policy and constitutional limitations, and finally, whether this court should exercise its discretionary authority by the issuance of its peremptory writ of mandamus.

The language of the Act is quite clear and states forthrightly that "It is the policy of this state that all state, county and municipal records shall at all times be open for a personal inspection by any person." It is the position of the petitioner that the word "all" means "all" and that because such language is plain and unambiguous, it is not necessary to bring to bear any intellectual activity to determine the meaning of this plain and concise language. Much can be said for the simplistic and mechanistic resolution urged by petitioner. However, we feel that to follow such course in this instance would be an abandonment of the responsibility, duties and obligations of this court. It is the opinion of this court that only by ignoring obvious and fundamental constitutional considerations of vital interest to the people of this state could we resolve the issues by referring only to the Public Records Act. We are persuaded that this cause does involve considerations of public policy, the public's right to know, the rights of individual privacy and the "chilling" and devastating effect which could be caused to the protection of sources of information which would thereby restrict the announced public policy of this state to seek the best qualified persons as governmental employees.

This court has heard extensive and well-presented argument upon the issues. Further, the court has received, and compliments the parties upon, the thorough and well-organized memorandums of law submitted to the court to aid it in the resolution of these issues.

The court concludes that the case law as enunciated by the appellate courts of this state clearly establishes nonstatutory exceptions to the Public Records Act. These exceptions are founded on the public policy of this state and upon constitutional considerations. (See *Lee v. Beach Publishing Company*, 173 So.440.)

"The theory that public employment may be subjected to any conditions, regardless of how unreasonable, has been uniformly rejected." (See *Keyishian v. Board of Regents*, 345 F.2d 236, Second Circuit Court of Appeals, and *Keyishian v. Board of Regents*, 17 L.Ed 2d 629, U. S. Supreme Court; *Pickering v. Board of Education*, 20 L.Ed 811, U. S. Supreme Court.) The question therefore presents itself as to whether one who applies or is being considered for public employment surrenders some of his rights to privacy, and further, whether persons who furnish information concerning the character and qualifications of such applicant also surrender any portion of their rights to privacy. The court is of the opinion that implicit in the application of a person for public employment there exists a limited surrender of the applicant's right to privacy but that such surrender does not apply to those who are themselves not being offered or considered for public employment.

While it is true that no specific language exists in our Bill of Rights granting a right of individual privacy, there can no longer be any doubt that there exists a zone of privacy that enjoys constitutional protection. *(Roe v. Wade, 35 L.Ed 2d 147.)* It seems that the subject of individual rights to privacy is in an embryonic and developing stage, and it is therefore encumbent upon us to approach the subject cautiously and in an unhurried manner in order that we be certain that what we are birthing and rearing is a healthy child and not an unruly cretin.

Few, if any, absolutes exist and this is certainly true of the right of an individual to privacy. The rights of privacy must give way to legitimate public interest. *(Harms v. Miami Daily News, Inc.* 127 So.2d 715.)

Both the petitioner and the respondent rely heavily upon the *Wisher* case. The *Wisher* case is first reported in a decision by the District Court of Appeal for the Second District of Florida and is cited as *Wisher v. News-Press Publishing Co.,* 310 So.2d 345.

We believe the opinion by the District Court is formulated upon broad grounds of public policy, and the recognition of the rights to individual privacy which would exempt from public disclosure personnel files of public employees. However, this cause was considered by the Supreme Court of Florida and is cited as *News-Press Publishing Company v. Wisher*, 345 So.2d 646. The Supreme Court recognized that "The District Court quite plausibly tackled the broader and more difficult questions" of the general right of access to personnel files. The Supreme Court, however, elected to dispose of the issue on much narrower grounds and elected to resolve the dispute without deciding the broader public policy questions. The Supreme Court did recognize, however, that underlying the cause were much more serious questions dealing with "free press" and "right of privacy." The Supreme Court therefore went on to dispose of the issue and reversed the District Court, as we read its decision, restricted to the consideration that the involved document was offered by a public body acting in an open public meeting and therefore fell clearly within considerations of the "Sunshine Act." (Section 286.011, Florida Statutes.)

It seems to this court therefore that though our Supreme Court did not address itself to the underlying issues which were addressed by the District Court that implicit in its decision is the recognition that there may be some limitation upon disclosure of the personnel files of public employees. Thus, this court is confronted with an opinion and statement of the law by a court of higher authority. It is therefore the opinion of this court that it has no privilege to announce its opinion upon a question addressed by a court of higher authority but is restricted to discerning the intent of that opinion and to apply the law as announced by higher authority to the best of the ability of this court to discern that law.

It is therefore the opinion of this court that one who voluntarily submits himself for public employment or consents that he be considered for such employment thereby consents to a limited waiver of his right of privacy and thereby consents that the public has the right to examine any application submitted by him or any form, résumé or correspondence emanating directly from the applicant.

The next question is whether the same limited waiver applies to other information, correspondence, or reports offered by third persons or notes, memorandums or summaries of conversations with third parties concerning the qualifications and character of the applicant. We ask, perhaps rhetorically, whether the desire and request of such third party for confidentiality is a request which society can recognize and accept as a fair and reasonable request. We think so. Such third person has injected himself into the public

domain no further than is the duty of any citizen interested in the efficient and honest conduct of public affairs.

Finally, we address ourselves to the advisability of exercising the powers of this court to grant the writ of mandamus. The writ, of course, is equitable in nature and is extraordinary in its effect. Such a writ should not issue where it will not promote substantial justice and where, in fact, it may effectuate injustice in the circumstances. Further, the writ should not issue to accomplish an idle or useless act nor should it issue where it might injuriously affect the rights of third parties who are not before the court and who have not had the opportunity to present a fair consideration of their interest.

At the trial of this cause respondent testified that upon advice of counsel applicants for the position of assistant city manager were informed that their applications and other documents would remain confidential. The court, for the reasons expressed, is of the opinion that such promises of confidentiality were without the right of the respondent to make. However, in reaching a decision in this case consideration must nevertheless be given to those persons who were mistakenly advised that the documents sought herein would remain confidential. At this point, it appears that the position of assistant city manager has been filled and in balancing the potential harm to applicants against the public policy of participation by the public in the decision-making process, the court is of the opinion that the peremptory writ of mandamus should not be issued. This conclusion should not be read, however, as a sanction to the withholding of public employment applications and other documents which should be open to public examination in the hope that court proceedings may delay such disclosure until such time as the hiring process has been completed. As the Supreme Court stated in *Wisher,* supra,

> "We cannot allow the purpose of our stat-
> utes to be thwarted by such obvious ruses."

It is, thereupon, ordered and adjudged as follows —

1. Petitioner's motion to limit the scope of alternative writ of mandamus is hereby granted.

2. The petitioner is entitled to the issuance of a peremptory writ of mandamus for disclosure of all documents emanating from applicants or those who have consented to be considered for public employment; however, for the reasons expressed herein and in the exercise of this court's discretion, the peremptory writ is hereby

withheld and the alternative writ heretofore issued is hereby dissolved.

3. The petitioner may disseminate this final judgment to such governmental entities within the second judicial circuit as it may deem advised.

4. The court retains jurisdiction for the purpose of determining and assessing costs.